**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

L. A. (JACK) THOMASSON,
Plaintiff-Appellant,

v.

JULES J. MODLINSKI, Individually and
in His Official Capacity as
Executive Director of Southside
Community Services Board;
EDWARD OWENS, Individually and in
His Official Capacity as Chairman
of the Board of Southside
Community Services Board;
SOUTHSIDE COMMUNITY SERVICES
BOARD; MECKLENBURG COUNTY,
VIRGINIA; BRUNSWICK COUNTY,                          No. 95-1663
VIRGINIA; HALIFAX COUNTY,
VIRGINIA; CITY OF SOUTH BOSTON,
VIRGINIA,
Defendants-Appellees,

and

BENNETT NELSON, Individually and
in His Official Capacity as Human
Resource Manager to Community
Service Boards with the Virginia
Department of Mental Health,
Mental Retardation and Substance
Abuse,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-94-256-R)

Argued: October 30, 1995

Decided: January 30, 1996

Before ERVIN, Chief Judge, and WIDENER and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Harris Dewey Butler, III, BUTLER, MACON, WIL-
LIAMS, PANTELE & LOWNDES, Richmond, Virginia, for Appel-
lant. Lynne Jones Blain, MORRIS & MORRIS, Richmond, Virginia,
for Appellees. **ON BRIEF:** William James Pantele, BUTLER,
MACON, WILLIAMS, PANTELE & LOWNDES, Richmond, Vir-
ginia, for Appellant. Michelle P. Wiltshire, MORRIS & MORRIS,
Richmond, Virginia, for Appellees Modlinski, Owens, and Board;
Yvonne S. Wellford, MALONEY, YEATTS & BARR, Richmond,
Virginia, for Appellees Halifax, Brunswick, and Mecklenburg;
W. Joseph Owen, III, COWAN & OWEN, P.C., Richmond, Virginia,
for Appellee South Boston.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant L. A. ("Jack") Thomasson and two co-workers com-
plained to the executive director of the public agency in which they

2

worked about the work habits of another co-worker over whom they had no supervisory authority. Thomasson alleges that in response to this speech he was suspended and then terminated. The district court found that the speech did not address a matter of public concern, and therefore was not protected by the First Amendment. The district court also found that the one-and-a-half year time period between Thomasson's initial suspension and the time at which he was ultimately reinstated and given back pay was not a deprivation of due process and granted summary judgment on that claim. Finding no error in the decision below, we affirm.

I.

Thomasson was employed by the Southside Community Services Board ["SCSB"], which was formed by the City of South Boston and the Counties of Halifax, Mecklenburg, and Brunswick, all in Virginia. This agency provides mental health, mental retardation, and substance abuse services for the localities. Appellee Jules Modlinski was the agency's executive director. Thomasson served as SCSB's Director for Fiscal and Administrative Services in 1991.

On December 4, 1991, Thomasson, Director of Mental Retardation Services Daniel F. McElroy, and Supervisor of Emergency Services Spencer Ferguson met with Modlinski to discuss their concerns about the work habits of an SCSB employee, B.C. Hall. The three men stated that they were there as taxpayers--as Thomasson apparently often did when he discussed agency business--and wished to report comments they had heard from members of the community. Modlinski told the men that he would look into the matter. The facts to this point are undisputed; the parties disagree, however about what else was said at the meeting. Although Thomasson claims otherwise, Modlinski testified that he did not recall any of the employees mentioning the concerns of community members or offering to provide names of people with information about Hall's time away from work.

Modlinski met with Hall the next day to discuss the men's allegations, and several days after that met with Hall and the three men. Modlinski concluded that there was insufficient evidence to support a finding that Hall's work habits were inappropriate. Moreover, after Hall told him that their surveillance was creating a difficult work

3

atmosphere for her, Modlinski instructed the three men to stop monitoring her comings and goings, and directed them all to write letters of apology to her. Hall later filed an internal complaint against the three men, as well as an EEOC charge alleging discrimination. Modlinski investigated the complaints and suspended Thomasson and McElroy for three days, and Ferguson for five days, **1** for creating an offensive work environment for Hall.

Following the three-day suspension, Modlinski placed Thomasson on a two-to-ten day suspension with pay so that he could investigate Thomasson's department. Several months later, Modlinski terminated Thomasson, citing insubordination and mismanagement.

Thomasson contested his suspension and termination according to Virginia's state grievance procedures. There was dispute as to whether his grievances should proceed collectively with those of McElroy and Ferguson, which caused some delay in the process. Later, questions were raised about panel members; resolving these questions occasioned further delay. After Thomasson's termination panel ordered him reinstated with back pay, the SCSB pursued several available avenues of appeal. Thomasson was reinstated at his former salary approximately one and a half years after the initial meeting with Modlinski.

Thomasson filed suit on April 15, 1994 under 42 U.S.C. § 1983. He named as defendants the SCSB, Edward Owens (president of the Board of the SCSB), Modlinski, the Counties of Mecklenburg, Halifax, and Brunswick, and the City of South Boston. He claimed that his suspension and termination were in retaliation for his exercise of First Amendment rights, and that the defendants violated his substantive and procedural due process rights by unjustifiably delaying the post-termination proceedings. The district court granted summary judgment for the defendants on February 8, 1995, on the grounds that Thomasson's speech was not a matter of public concern, and that the delays in his hearings did not amount to a denial of due process. Thomasson v. Modlinski, 876 F. Supp. 818, 822, 824 (E.D. Va. 1995).

_____

**1** Ferguson's longer suspension was apparently due to his institution of the "B.C. Patrol," which he jokingly used to refer to his efforts to locate Hall.

4

II.

Summary judgments are appropriate in those cases in which there are no genuine issues of material fact. Fed. R. Civ. Pro. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on any essential element of the case for which the non-moving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Grants of summary judgment are reviewed de novo on appeal. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). Whether speech relates to a matter of public concern is a question of law and is reviewed de novo on appeal. Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 192 (4th Cir. 1994).

A.

To establish a claim for retaliatory discharge based on the exercise of First Amendment free speech rights, an employee must demonstrate that the speech was protected by the First Amendment and was the "but for" cause of the discharge. Jurgensen v. Fairfax County, Va., 745 F.2d 868, 877-78 (4th Cir. 1984) (citing Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The first of these two factors is a question of law, not of fact.[2] Jurgensen, 745 F.2d at 878 (citing Connick v. Myers, 461 U.S. 138, 148 n.7 (1983); Jones v. Dodson, 727 F.2d 1329, 1334 (4th Cir. 1984)).

Not all speech by government employees is constitutionally protected, because the government has some rights in its capacity as an employer that it does not have in other contexts. See Pickering v. Board of Educ., 391 U.S. 563, 574 (1968). In Connick v. Myers, 461 U.S. 138 (1983), the Supreme Court emphasized that the First Amendment rights of government employees are implicated when

_____

[2] Although Jurgensen says that the second factor is also a question of law, 745 F.2d at 878, subsequent cases explain that this is a factual determination, reversible only when there was clear error. Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 193 (4th Cir. 1994).

5

they have spoken about <u>matters of public concern</u> . <u>Id</u>. at 146 ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices . . . ."). The government as employer enjoys considerable discretion in personnel decisions, provided that those decisions do not infringe on constitutional rights. <u>Id</u>. at 146. To determine whether the speech in question is a matter of public concern, courts are to look to the content, form, and context of the speech. <u>Id</u>. at 147-48.

The Fourth Circuit has interpreted the line of Supreme Court cases which includes <u>Pickering</u> and <u>Connick</u> to mean that

> <u>all</u> public employee speech that by content is within the general protection of the first amendment is entitled to at least qualified protection against public employer chilling action except that which, realistically viewed, is of purely "personal concern" to the employee--most typically, a private personnel grievance.

<u>Berger v. Battaglia</u>, 779 F.2d 992, 998 (4th Cir. 1985), <u>cert. denied</u>, 476 U.S. 1159 (1986). The test boils down to "whether the `public' or the `community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a `private' matter between employer and employee." <u>Id</u>. at 999; <u>see also Barnes v. Small</u>, 840 F.2d 972, 982-83 (D.C. Cir. 1988) (letters addressing misbehavior of other employees in plaintiff's office held not to touch on matters of public concern; not enough that "statements reported perceived misconduct by government officials charged with carrying out congressionally mandated programs"); <u>Ferrara v. Mills</u>, 781 F.2d 1508, 1516 (11th Cir. 1986) ("[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run."). Speech made privately to the employer may nonetheless be of public concern. <u>Berger</u>, 779 F.2d at 999 (citing <u>Givhan v. Western Line Consol. Sch. Dist</u>, 439 U.S. 410 (1979)).

In this case, the district court addressed the content, form, and context of Thomasson's speech as directed by <u>Connick</u>. The court found that the content was "an argument among employees about Hall's

6

work hours, not a dispute about how the agency should be spending its money." 876 F. Supp. 818, 823 (E.D. Va. 1995). As to the form of the comments, Thomasson's use of the label taxpayer did not change the nature of the speech--"an internal dispute between employees does not become a matter of public concern simply because one of the staffers strikes the pose of a concerned taxpayer . . . ." Id. (citing Ferrara v. Mills , 781 F.2d 1508, 1516 (11th Cir. 1986)). Finally, the court found that the context of the remarks clearly showed that they were not of public concern. It noted that

> Hall's work habits were the subject of gossip and dis-gruntlement among Thomasson, McElroy and Ferguson. . . . Thomasson may well have had good reason to be upset about Hall's work habits, but voicing these concerns did not constitute speech about a matter of public concern.

Id. In response to Thomasson's argument that public concern was evident in the public discussion of Hall, the district court noted that the record lacked competent evidence that members of the community were in fact talking about Hall's work habits. Id. at 823-24. Moreover, the judge wrote that Thomasson's complaints about affairs in his office do not "become cloaked with the protection of the First Amendment simply because Ms. Hall is the object of gossip outside the office." Id. at 824.

We agree with the district court that Thomasson's speech was not on a matter of public concern. Therefore, his claim that he was fired for exercising his First Amendment rights must fail.

B.

Thomasson claims that his due process rights have been denied by appellees' pattern of delay. This claim grows out of the Supreme Court's proclamation in Cleveland Board of Education v. Loudermill: "At some point, a delay in the post-termination hearing would become a constitutional violation." 470 U.S. 532, 547 (1985). In the Loudermill case, the Court found that a nine-month delay in post-termination proceedings was not unconstitutionally long, at least in part because the plaintiff did not explain the reasons for the delay. Id.

7

Thomasson claims "deliberate machination of the process meant to induce delay or harm." The district court found, and we agree, that "Thomasson is fighting an uphill battle on these allegations since he was reinstated by a state grievance panel and provided with back pay." 876 F. Supp. at 822. Moreover,

> some of the delays were requested by Thomasson and others resulted from the replacement of a hearing officer due to a perceived conflict of interest. . . [and] the appeals pursued by the SCSB were provided for by the grievance procedure.

Id. Many of the delays stemmed from scheduling conflicts or the normal processing periods of public agencies and courts.

These kinds of non-egregious delays simply do not amount to a constitutional case. The Supreme Court, for good reason, has not specified a constitutionally required time period within which all post-termination procedures must be complete. We hold that in this case the eighteen-month time period did not amount to a deprivation of due process, especially since the process has provided substantial relief to the plaintiff.

III.

Because the district court properly held that Thomasson's speech was not a matter of public concern, we affirm the grant of summary judgment on Thomasson's First Amendment claim. We also affirm the grant of summary judgment on his due process claim.

AFFIRMED

8